J-A16023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENNETH MARTIN | : | |
| | : | |
| Appellant | : | No. 1474 MDA 2020 |

Appeal from the PCRA Order Entered October 27, 2020
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001662-2012, CP-41-CR-0001990-2013

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: AUGUST 5, 2022**

Kenneth Martin (Appellant) appeals from the order entered in the Lycoming County Court of Common Pleas, denying his first, timely Post Conviction Relief Act[1] (PCRA) petition. He seeks relief from the judgment of sentence entered following his jury convictions of conspiracy, aggravated assault, robbery,[2] and related offenses. Previously, on October 26, 2021, this panel quashed Appellant's appeal, concluding his single notice of appeal did not comply with Pa.R.A.P. 341(a) or **Commonwealth v. Walker**, 185 A.3d

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **See** 18 Pa.C.S. §§ 903, 2702(a)(4), 3701(a)(1)(ii), (iv).

969 (Pa. 2018).[3]  On May 9, 2022, the Pennsylvania Supreme Court vacated our decision and remanded for this Court to reconsider in light of *Commonwealth v. Young*, 265 A.3d 462 (Pa. 2021).[4]  We now conclude that under *Young*, Appellant's notice of appeal does not violate *Walker*, and thus we address his issues: seven allegations of trial counsel's ineffectiveness, as well as a claim of after-discovered evidence.  After careful review, we affirm.

Preliminarily, we note Appellant's counsel, Helen Stolinas, Esquire, raises a large number of claims, but fails to address any of the PCRA court's well-reasoned analyses.  We remind counsel of

> the importance of expert, focused appellate advocacy.  While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated presents the greatest likelihood of success.  We concur with the view of an eminent appellate jurist, Judge Ruggero Aldisert, that the number of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid.  As Judge

---

[3] *See Walker*, 185 A.3d at 972 (when "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed"), *citing* Pa.R.A.P. 341, *cmt*.

[4] *See Young*, 265 A.3d at 477 (reaffirming *Walker*'s pronouncement that proper Rule 341(a) practice is to file separate appeals from an order resolving more than one docket, but expressly overruling those statements in the opinion indicating "[t]he failure to do so **requires** the appellate court to quash the appeal," and holding, "where a timely appeal is erroneously filed at only one docket, [Pa.R.A.P.] 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate").

>   Aldisert puts it, "Appellate advocacy is measured by effectiveness, not loquaciousness."

*See Commonwealth v. Ellis*, 626 A.2d 1137, 1140-41 (Pa. 1993), *citing* R. Aldisert, "The Appellate Bar: Professional Competence & Professional Responsibility — A View From the Jaundiced Eye of One Appellate Judge," 11 CAP.U.L.REV. 445, 458 (1982). *See also Commonwealth v. Walker*, 954 A.2d 1249, 1255 (Pa. Super. 2008) (*en banc*) ("This Court is an error-correcting court; it is not an error-finding court.").

## I. Notice of Appeal Under *Walker* & *Young*

We first review the issue remanded by the Pennsylvania Supreme Court — whether Appellant's notice of appeal was proper under *Walker* and *Young*. Additionally, this is the first issue in Appellant's brief. Appellant's Brief at 20-22.

We reiterate the following relevant procedural history: following a preliminary hearing in September of 2012, almost all the charges against Appellant were held over for court, at trial docket CP-41-CR-0001662-2012 (Docket 1662-2012). The Commonwealth refiled a burglary[5] charge at trial docket CP-41-CR-0001990-2013 (Docket 1990-2013), which was held over for court. The trial court consolidated the two dockets in 2014.

---

[5] 18 Pa.C.S. § 3502(a).

*Commonwealth v. Martin*, 1962 MDA 2016 (unpub. memo. at 6) (Pa. Super. June 26, 2018) (direct appeal).

The PCRA court entered the underlying PCRA order on October 27, 2020; this order listed both trial docket numbers. On November 16th, Appellant's then-attorney, Leonard Gryskewicz, Jr., Esquire, filed one notice of appeal, which similarly listed both docket numbers. The PCRA court subsequently permitted Attorney Gryskewicz to withdraw and appointed present counsel, Attorney Stolinas.

On January 4, 2021, Attorney Stolinas filed a motion with the PCRA court to substitute the notice of appeal with two separate notices of appeal. The motion asserted: "Attorney Gryskewicz was ineffective for failing to file separate Notices of Appeal and the pending appeal will undoubtedly be quashed by the Superior Court." Appellant's Motion to Substitute Notice of Appeal *Nunc Pro Tunc*, 1/4/21, at 1. The PCRA court denied the motion, reasoning, *inter alia*, that it lacked jurisdiction to grant relief on any new claim of PCRA counsel's ineffectiveness because the case was pending on appeal. Order, 1/12/21, at 1-2.

As stated above, this panel quashed this appeal on October 26, 2021, noting that while the Pennsylvania Supreme Court had granted allowance of appeal in ***Young***, we were constrained to apply the then-controlling law, which was ***Walker***'s "bright line rule" to file separate notices of appeal at each trial

docket. We noted, however, that Appellant could seek allowance of appeal in the Supreme Court. Appellant did so.

Thereafter, the Supreme Court issued a decision in **Young**. In that case, some charges were initially bound over for court, and the Commonwealth successfully refiled other charges, which resulted in three trial dockets for the same defendant. **Young**, 265 A.3d at 465-66. Subsequently, the trial court issued a suppression order in favor of the defendant, which listed all three docket numbers. **Id.** at 466. The Commonwealth filed one notice of appeal, which likewise contained all three docket numbers. **Id.** There was no dispute the notice of appeal was timely filed. **Id.** at 476. In addressing the potential **Walker** violation, the Commonwealth "candidly admit[ted] it submitted only one notice of appeal" and requested permission from this Court to file separate notices of appeal, to comply with **Walker**. **Id.** at 476. This Court denied the request and quashed. **See id.** at 467.

On review, our Supreme Court considered Pa.R.A.P. 902, which provides:

> "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken."

**Young**, 265 A.3d at 475, *quoting* Pa.R.A.P. 902 (emphasis removed). The Court noted, "Rule 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate[,]" and agreed "with the

- 5 -

Commonwealth that 'there would have been no prejudice' to the defendant[ ] had the Superior Court granted its prompt and clear request for remand to correct the procedural defect once it was identified." ***Young***, 265 A.3d at 477 (footnote & citation omitted). The Supreme Court held that under the particular circumstances, quashal was not required, and remanded to the Superior Court to reconsider the Commonwealth's request to file amended notices of appeal. ***Id.*** at 476-78.

On May 9, 2022, the Court vacated the quashal in this case and remanded for this Court to reconsider Appellant in light of the ***Young*** decision.

Analogous to the facts in ***Young***, some charges against Appellant were initially bound over for court, the Commonwealth successfully refiled a burglary charge, and thus the same criminal incident gave rise to two trial docket numbers. ***See Young***, 265 A.3d at 465-66. Like the suppression order in ***Young***, the underlying PCRA order addressed the same defendant and "one set of facts and issues[.]" ***See id.*** at 468. Appellant's notice of appeal was timely filed. However, Appellant's present counsel recognized that PCRA counsel filed a defective single notice of appeal, anticipated quashal, and thus requested leave from the PCRA court to file substituted notices of appeal to come into compliance with ***Walker***. Although the PCRA court denied that request, we now apply ***Young*** and Pa.R.A.P. 902, and conclude we may overlook the defective, single notice of appeal. ***See id.*** at 477.

## II. Facts & Direct Appeal

On direct appeal, this Court set forth a detailed account of the facts and procedural trial history. *Martin*, 1962 MDA 2016 at 1-10. For ease of this PCRA appeal review, we excerpt the following relevant background. The victim, Noor Ford (the Victim) sold heroin for Appellant and owed him approximately $1,000. On June 19, 2012, Appellant and two men entered the Victim's motel room without permission. Appellant aimed a semiautomatic pistol at the Victim and demanded the money owed. When the Victim replied he did not have any money, Appellant pistol-whipped him and his companions punched and kicked the Victim, eventually knocking him unconscious. The three men ransacked the Victim's room, stealing money, heroin, an Xbox video game console, backpack, duffel bag, and the Victim's iPhone. The motel's surveillance video showed Appellant and two men leaving with a duffel bag and a backpack.

Pennsylvania State Trooper Tyson Havens, who had known the Victim for a few years, participated in the investigation. From the motel's surveillance video, he identified two of the assailants as Terrence Forsythe and Michael Wills. In an interview at the hospital, the Victim told Trooper Havens he was assaulted by two people named "Snoop" and "Dark," as well as a third person whose name he did not know. *Martin*, 1962 MDA 2016 at 2. In a second interview with police, the Victim described "Snoop" as having the number "13" tattooed between his eyes. *Id.* Based on this description,

Trooper Havens identified "Snoop" to be Appellant. "During a third interview, [the Victim] signed a statement typed by Trooper Havens after making several redactions out of fear for his safety because of threats from Appellant." **Id.** at 3-4. Finally, Trooper Havens learned that photographs — of Appellant punching the Victim and of the Victim's swollen and bloody face — were posted to Instagram with suggestions that the Victim was beaten due to a drug debt.

Following a mistrial in June of 2015, these charges proceeded to a jury trial in January of 2016. Appellant was represented at both trials by Edward Rymsza (Trial Counsel). The Victim testified he did not recall: being present at the motel on the day of the assault; being injured or treated at the hospital; nor being interviewed by police. N.T. Jury Trial, 1/28/16, at 97-98. The Commonwealth made an oral motion for the trial court to declare the Victim unavailable as a witness.[6] **Id.** at 99. Over Trial Counsel's objection, the trial

_____

[6] The trial court had previously declared the Victim an unavailable witness at two pre-trial hearings. First, the Victim failed to appear at the September 2012 preliminary hearing for Docket 1662-2012.

> There was evidence [the Victim] had fled from the area because of threats received from Appellant. Trooper Havens testified [the Victim] told him that if Appellant or his people found out about his cooperation, he and his family would be put at risk . . . .

**Martin**, 1962 MDA 2016 at 5 n.4, *citing* N.T., 9/13/12, at 20. The trial court accordingly permitted the Commonwealth to introduce the Victim's statements to police.

Subsequently, the Victim was found and held on a material witness warrant. **Martin**, 1962 MDA 2016 at 5. At a March 10, 2014, pre-trial
*(Footnote Continued Next Page)*

court agreed, and further found that due to Appellant's own wrongdoing, he forfeited his right to cross-examine the Victim and to call the Victim as a witness. *Id.* at 128-29 (trial court citing *U.S. v. White*, 116 F.3d 903, 911 (D.C.Cir. 1997), "[T]he defendant who has removed an adverse witness is in a weak position to complain about losing a chance to cross examine that witness."). The court thus permitted the Commonwealth to introduce the Victim's prior oral and written statements. *Id.* at 112-16.

Appellant did not testify or present evidence. N.T. Jury Trial, 1/29/16, 8:40 a.m., at 119. The jury found Appellant guilty of two counts each of conspiracy and robbery, and one count each of aggravated assault, burglary, simple assault, terroristic threats, recklessly endangering another person, criminal trespass, theft by unlawful taking, and receiving stolen property.[7]

On July 7, 2016, the trial court imposed an aggregate sentence of 7½ to 20 years' incarceration. This Court affirmed the judgment of sentence on

---

omnibus hearing, however, the Victim testified he could not remember the assault or any of the statements he made to Trooper Havens. *Id.* at 6. The trial court found forfeiture by wrongdoing, reasoning that although the Victim was now physically present to testify, "[i]t was apparent to the court [the Victim] was feigning a lack of memory to avoid admitting anything in [Appellant's] presence." *Id.* at 7, *quoting* Trial Ct. Op., 9/24/14, at 6. *See* Pa.R.E. 804(b)(6) ("The following [is] not excluded by the rule against hearsay if the declarant is unavailable as a witness: [a] statement offered against a party that wrongfully caused . . . the declarant's unavailability as a witness, and did so intending that result.").

[7] *See* 18 Pa.C.S. §§ 2701(a)(1), 2705, 2706(a)(1), 3503(a)(1)(i), 3921(a), 3925(a).

June 26, 2018, and on December 26th, our Supreme Court denied Appellant's petition for allowance of appeal.

### III.  PCRA Proceedings

Appellant filed the instant, first, timely PCRA petition *pro se* on February 25, 2019.[8]   He then privately retained Attorney Gryskewicz and David Lampman, Esquire,[9] who filed a 35-page supplemental PCRA petition on June 28th, raising 11 claims of ineffective assistance of counsel.  This petition also presented a claim of after-discovered evidence, in the form of a February 2017 letter by the Victim, which stated he did not "recall ever seeing [Appellant] involve[d] in the situation," and "[a]ny suggestion made is due to Trooper Haven forcefull [sic] and personal agenda towards" Appellant.   Un-Sworn Affidavit by Noor Ford, 2/10/17, Exh. A to Appellant's Supplemental PCRA Petition, 6/28/19.

On July 21, 2020, the PCRA court granted an evidentiary hearing on two of Appellant's claims, that Trial Counsel was ineffective for: (1) not calling Jermaine Mullen to testify at trial; and (2) not moving for a mistrial when the

---

[8] **See** 42 Pa.C.S. § 9545(b)(1) ("[Any PCRA petition] shall be filed within one year of the date the judgment becomes final[.]"), (3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.").

[9] This panel's prior memorandum mistakenly stated these attorneys were court-appointed.

Commonwealth played a portion of the Victim's recorded statement, which the trial court had previously ruled was inadmissible. The court also gave Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's remaining claims without a hearing, issuing a thorough, 32-page opinion addressing each issue.

The PCRA court conducted the evidentiary hearing on September 24, 2020. Trial Counsel, Appellant, and Trooper Havens testified. Appellant also called Jermaine Mullen. On October 27th, the PCRA court denied Appellant's PCRA petition, issuing a second opinion, which thoroughly addressed the two ineffectiveness claims heard at the evidentiary hearing. Appellant filed a timely notice of appeal as discussed above, and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### IV. Questions Presented & Standard of Review

Appellant presents ten issues, one with sub-issues, for our review:

1. Is the inclusion of two docket numbers on the notice of appeal by prior counsel fatal to Appellant's right to appellate review of the denial of the PCRA, even though there was one consolidated trial and current counsel made a timely effort to correct the record in the trial court?

2. Was counsel ineffective for arguing the incorrect legal standard and requesting an improper remedy when the Commonwealth made an *ex parte* request for a change of trial judge?

3. Was counsel ineffective in responding and objecting to testimony from and about the alleged victim as follows:

   a. Failing to ask for a mistrial when the Commonwealth played a recording in which the witness stated he was afraid of being threatened in violation of the Court's prior ruling precluding the introduction of that portion of the tape?

b. Failing to raise a specific objection to the trial court's ruling disallowing Noor Ford as a witness in the defense case-in-chief, which violated Appellant's 6th Amendment and Pennsylvania Constitutional rights to call witnesses, present a defense, and to due process of law?

c. Failing to confront the . . . trooper with the alleged victim's statements that he did not trust the trooper, and related statements made during the Pre-Trial Hearings?

4. Was counsel ineffective for failing to object to the trooper's testimony regarding [A]ppellant's girlfriend and her association with criminals and criminal activity that was more prejudicial than probative?

5. Was trial counsel ineffective for withdrawing his hearsay objection to the trooper's testimony that a local attorney greeted Appellant by his street name, and Appellant responded to that name, when identity was at issue?

6. Was counsel ineffective for failing to lodge an objection to the Instagram photograph of Appellant counting stacks of money?

7. Was counsel ineffective for failing to call a witness for the defense who could negate the elements of robbery and theft?

8. Was counsel ineffective for failing to object to the prosecutor's prejudicial argument which tended to inflame the jury?

9. Did the letter in which the alleged victim stated that he didn't recall Appellant's participation in the incident and that "any suggestion made is due" to the trooper's "forceful and personal agenda against Appellant" constitute after-discovered evidence which entitled Appellant to relief under the PCRA?

10. Did the cumulative impact of Trial Counsel's errors create such prejudice as to violate the Appellant's rights to a fair trial under the US and Pennsylvania Constitutions?

Appellant's Brief at 4-6.

"On appeal from the denial of PCRA relief, our standard of review is whether the findings of the PCRA court are supported by the record and free

of legal error." ***Commonwealth v. Sneed***, 45 A.3d 1096, 1105 (Pa. 2012)

(citation omitted).

> To prevail on a claim that counsel was constitutionally ineffective, the defendant must overcome the presumption that counsel was effective by showing that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." Moreover, a failure to meet any of the prongs bars relief.

***Id.*** at 1106, *citing*, *inter alia*, ***Strickland v. Washington***, 466 U.S. 668,

(1984); ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001).

## V. Commonwealth's *Ex Parte* Communication with President Judge

Before reviewing Appellant's arguments on his first claim of Trial

Counsel's ineffectiveness, we set forth the following background:

> [Following the 2015 mistrial, a] new trial was scheduled before the Honorable Michael J. Williamson, but on the day before it was to begin, this case was reassigned . . . to the Honorable Marc F. Lovecchio.[10] N.T., 1/28/16 at 5-6. As a result of the sudden reassignment . . . Appellant presented an oral motion to **dismiss [the charges]**, alleging improper *ex parte* communication between the prosecutor's office and President Judge Nancy L. Butts. ***Id.*** at 20. According to Appellant, he was prejudiced by the removal of Judge Williamson[, who "may have ruled favorably on his pretrial motions."] ***Id.*** at 20-21.

***Martin***, 1962 MDA 2016 at 8 & n.7.

_____

[10] Judge Lovecchio presided over both the January 2018 jury trial and underlying PCRA proceedings.

On the day of trial, the trial court conducted a hearing and permitted Appellant to call District Attorney Eric Linhardt, who testified to the following. The day before, in an unrelated trial, Judge Williamson, a visiting judge, granted a motion for judgment of acquittal before the Commonwealth concluded its case-in-chief. N.T., 1/28/16, at 13. That afternoon, District Attorney Linhardt told President Judge Butts, over the telephone, of his concern of a "pattern" of "unprofessional behavior and misconduct," by Judge Williamson, in each of three trials over three days that week. *Id.* at 15-16, 18. The District Attorney did not request a particular Judge to be assigned this case, but instead requested that Judge Williamson be removed from any other cases that week, including Appellant's and at least two other cases. *Id.* at 16, 19, 26. The trial court denied Appellant's motion to dismiss the charges, rejecting Appellant's contention that the Commonwealth was improperly "judge shopping." *See id.* at 22.

On direct appeal, Appellant again argued the Commownealth's *ex parte* communication with the President Judge was an impermissible attempt at judge shopping, and the Commonwealth's actions created the appearance of impropriety and warranted dismissal. This Court disagreed, concluding: "there [was] no evidence of judge shopping;" there was no evidence the District Attorney requested Judge Lovecchio preside over this case; instead, the District Attorney requested that Judge Williamson not preside over any

cases; and Appellant failed to prove any prejudice by the reassignment of Judges. *Martin*, 1962 MDA 2016 at 18-19.

Appellant acknowledges this issue — the Commonwealth's *ex parte* communication with the President Judge — was raised on direct appeal, but now asserts Trial Counsel was ineffective for "arguing the incorrect legal standard" and claiming prejudice, where "the standard for judge-shopping does not require proof of prejudice but [instead] the appearance of impropriety." Appellant's Brief at 22-24. Appellant further contends Trial Counsel was ineffective for requesting dismissal of the charges, as the appropriate remedy for improper judge shopping would have been reassignment of the case back to Judge Williamson. *Id.* at 23. No relief is due.

The PCRA court thoroughly discussed this ineffectiveness claim, with relevant decisional authority, in its July 21, 2020, opinion. Appellant, however, fails to address the court's reasoning. Instead, as will be true for Appellant's remaining issues, he merely presents the ineffectiveness claim to this Court, as if in the first instance, for review of the underlying merits. *See Walker*, 954 A.2d at 1255 ("This Court is an error-correcting court; it is not an error-finding court."). In any event, after careful review of the parties' briefs, the certified record, and relevant authority, we adopt the reasoning of the PCRA court and conclude no relief is due. *See* PCRA Ct. Op., 7/21/20, at 21-24 (noting: in denying motion to dismiss charges, trial court found no

- 15 -

nexus between District Attorney Linhardt's action and President Judge Butts' decision to reassign case; Appellant presented no evidence that Commonwealth requested the case be reassigned to the new trial judge; Appellant never complained of **court** misconduct, but instead alleged the **Commonwealth's** misconduct; Superior Court concluded there was no evidence of "judge shopping" and no undue prejudice; and the fact, that Trial Counsel may have argued an incorrect legal standard or not requested reassignment back to Judge Williamson, assumes there was some evidence of judge shopping, but there was no such evidence).

### VI. Recording of the Victim's Statement

We first set forth the following context for Appellant's next ineffectiveness claim; this issue was presented at the September 24, 2020, PCRA evidentiary hearing. At trial, the trial court granted Appellant's request to preclude certain statements within a recorded statement the Victim gave to police.

> Despite the court's ruling, the Commonwealth erroneously played a portion that . . . the court precluded. Specifically, the jury heard the following statement by [the Victim]:
>
> "I don't want them to come after me."
>
> As soon as this was inadvertently played[, Trial Counsel] objected to it again and that objection was sustained.

PCRA Ct. Op., 10/27/20, at 8-9 (italics omitted). **See also** N.T., 1/28/16, at 164-67.

Presently, Appellant acknowledges Trial Counsel made a contemporaneous objection, but contends he was ineffective for not also requesting a mistrial. Appellant claims the Victim's statement — "that he didn't want 'them' to come after him" — "permit[ted] the jury to speculate as to whether Appellant and/or any . . . associated individuals had threatened or given [the Victim] reason to fear, particularly where the charges involve assaultive and violent behavior." Appellant's Brief at 28. Appellant further reasons the fact the Victim would not be testifying, and thus could not be confronted about the statement, "compound[ed] the prejudice." *Id.* We conclude no relief is due.

We note:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial.

*Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*) (citations omitted). Furthermore, under our ineffective assistance-framework, with respect to whether an attorney had a reasonable basis for their actions or inactions, our Supreme Court has stated:

> "Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." "A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for

success substantially greater than the course actually pursued."
A claim of ineffectiveness generally cannot succeed "through
comparing, in hindsight, the trial strategy employed with
alternatives not pursued."

*Sneed*, 45 A.3d at 1107 (citations omitted).

At the PCRA hearing, Trial Counsel testified as to his reasons for not requesting a mistrial: "[t]here were several individuals in the [motel] room at the time of the alleged incident and the statement could have referenced any of them[,] if [in fact the Victim] was referring to them[;]" the statement did not mention Appellant by name; Trial Counsel "did not find the statement 'objectionable enough' to warrant a mistrial;" the Victim had already testified he did not remember anything; and the jury saw photos implicating Appellant and depicting the Victim's injuries, as well as the surveillance videos. *See* PCRA Ct. Op., 10/27/20, at 9.

On appeal, Appellant does not address any of this testimony. Furthermore, the PCRA court reasoned this "very brief and innocuous" statement did not have an unavoidable effect of depriving Appellant of a fair trial, "particularly since [his] name was never mentioned[.]" PCRA Ct. Op., 10/27/20, at 10. The PCRA court also stated it would not have granted any request for a mistrial. *Id.* at 10. As Trial Counsel provided reasonable bases for why he did not request a mistrial, after having already lodged a successful objection, we do not disturb the PCRA court's denial of relief on this issue. *See Sneed*, 45 A.3d at 1106, 1107.

**VII. Calling the Victim to Testify in Defense's Case in Chief**

In his third claim of ineffective assistance, Appellant asserts: although his "rights to confrontation may have been deemed to be waived under the forfeiture by wrongdoing [ruling]," Trial Counsel failed to argue he had a separate and distinct right to call witnesses and present a defense. Appellant's Brief at 29-31, *citing* ***Washington v. Texas***, 388 U.S. 14, 19 (1967). Appellant reasons that although he was precluded from cross-examining the Victim, Trial Counsel should have sought to call him in the defense's case-in-chief. ***Id.*** at 29-30. Specifically, Appellant points to the Victim's testimony at trial that "2012 was dark times for [him. He] was getting high . . . ." ***Id.*** at 30. Appellant states the reasons for the Victim's "dark times" may have been "the alleged assault, drug use, coercion by law enforcement, or a number of other reasons[.]" ***Id.*** Appellant insists this issue "could have been explored during cross-examination or in Appellant's case-in-chief." ***Id.*** No relief is due.

We again caution Attorney Stolinas to thoroughly review the PCRA court's analysis. The court specifically pointed out that Trial Counsel **twice** argued he should be permitted to call the Victim in his case-in-chief. PCRA Ct. Op., 7/21/20, at 10, *citing* N.T., 1/28/16, at 111 (Trial Counsel responding to trial court, "So you're going to preclude me from calling him on my case in direct," and arguing, "[The Victim is] now available in my case in chief."), 123 (trial court acknowledging defense's argument that Appellant "should be able

- 19 -

to call [the Victim] as a witness"). The factual premise of Appellant's ineffectiveness claim is thus mistaken.

Second, in focusing on the trial court's forfeiture by wrongdoing ruling, Appellant overlooks the court's companion, but distinct, declaration that the Victim was unavailable as a witness. *See* Pa.R.E. 804(a)(3) ("A declarant is considered to be unavailable as a witness if [they testify] to not remembering the subject matter[.]"). Our Supreme Court has held an attorney was not ineffective for not calling an unavailable witness, where that witness appeared at trial but refused to testify. *See Commonwealth v. Malloy*, 856 A.2d 767, 782 (Pa. 2004) ("Since [the witness] made himself unavailable/unwilling to testify, [the defendant's] claim of ineffective assistance of counsel for failing to call [the witness] fails for lack of arguable merit.").

Finally, there was no further explanation, in the trial testimony, for the Victim's statement. Appellant now merely speculates that "coercion by the police" could have been a reason why "2012 was dark times for" the Victim, and does not explain how, if true, it would have been relevant to his defense. *See* Appellant's Brief at 30. In support, Appellant refers to the Victim's 2017 after-discovered evidence/letter, which alluded to Trooper Haven's "forceful[ ] and personal agenda against Appellant." *Id.* However, this letter was not signed until a year after trial concluded, and Appellant offers no rationale why Trial Counsel should have been aware of this issue at the time of trial. *See id.* For the foregoing reasons, no relief is due.

## VIII. Cross-Examination of Trooper Havens

We observe Appellant's **six** remaining ineffectiveness claims are each presented with short, conclusory arguments, approximately several lines in length. Again, none addresses the PCRA court's well-reasoned opinions for denying relief, and most overlook other relevant evidence that provides context for the challenged issue. We further note with displeasure that Appellant fails to provide record citations for any of his numerous references to the trial proceedings. *See* Pa.R.A.P. 2119(c) ("If reference is made to the . . . evidence . . . or any other matter appearing in the record, the argument must set forth . . . a reference to the place in the record where the matter referred to appears.").

First, Appellant maintains that in an interview with Detective Sorage, the Victim "expressed distrust and animosity toward . . . Trooper Havens." Appellant's Brief at 32. Reiterating that he was unable to cross-examine the Victim at trial, Appellant avers Trial Counsel was ineffective for not instead cross-examining Trooper Havens about these statements by the Victim. *Id.* Appellant reasons "[t]his evidence would have tended to impeach Trooper Havens' credibility [and] expose his bias against Appellant[.]" *Id.* This claim is meritless.

The PCRA court recounted that at trial, the

court discussed . . . proposed testimony about why [the Victim] was afraid of testifying. [Trial C]ounsel noted that he couldn't cross examine [Trooper] Havens regarding [the Victim's] state of mind and why he said the things he said.

- 21 -

PCRA Ct. Op., 7/21/20, at 19, *citing* N.T., 1/28/16, at 123-24, 126. Appellant does not challenge this rationale — that Trooper Havens was not competent to testify about the Victim's state of mind.

The PCRA court also noted the trial court had granted a defense motion to preclude post-assault hearsay statements, made by Appellant, connected to threats made against the Victim. PCRA Ct. Op., 7/21/20, at 19-20. "By way of a request for clarification," the trial court precluded the Commonwealth from introducing "'in any form through any witness' . . . any testimony that [the Victim] was allegedly scared or threatened by [Appellant] or '**anyone else**.'" *Id.* at 20 (emphasis added). The PCRA court thus reasoned there was no arguable merit in Appellant's present ineffectiveness claim, as "[c]learly, counsel's decision to preclude" evidence of his own threats to the Victim resulted in the defense also "being precluded from offering opposing testimony." *Id.* Again, Appellant does not dispute this reasoning. No relief is due.

### IX. Instagram Photo

At trial, the Commonwealth introduced social media photographs, posted to Instagram, of Appellant punching the Victim and of the Victim's swollen and bloody face. Presently, Appellant asserts Trial Counsel was ineffective for not objecting to the admission of another photo, posted to the account of "Snoop_Rock," which depicted Appellant "counting a few stacks of cash." Appellant's Brief at 34. Appellant maintains this photograph was not

relevant to the instant offenses nor the identity of the perpetrator, but instead, "tended to show [he] was either a drug dealer or a thief[.]" ***Id.***

Appellant ignores the PCRA court's reasoning, that the photograph was "properly admitted as circumstantial evidence of both [Appellant's] use of the nick name Snoop and the authentication of the relevant photographs of [the Vicitm's [assault]." PCRA Ct. Op., 7/21/20, at 24. Appellant's argument, as to the relevance of the photograph, is thus meritless, and no relief is due.

## X. Trooper Havens' Testimony About Jessica Brown

At trial, the Commonwealth played an audiotape of the Victim's interview with police. N.T., 1/28/16, at 163-64, 188. There was "talk in the interview about Snoop's girlfriend being a person named Jessica Brown," and Appellant's Counsel asked Trooper Havens whether he knew Brown. ***Id.*** at 188. The trooper replied: he came to know Brown a year earlier, when the trooper "was involved in an arrest of [someone] on federal parole for drug dealing[,] and that person at the time was with" Brown; and as a member of the "street crimes unit," the trooper also encountered Brown "on a regular basis on the street." N.T., 1/28/16, at 188-89.

On appeal, Appellant argues this "testimony clearly established that Jessica Brown was involved with drugs, drug dealing and criminals," and "[b]y association[,] unfairly placed Appellant in the same light in front of the jury[.]" Appellant's Brief at 35. Appellant contends Trial Counsel was ineffective for not raising an objection. ***Id.*** at 36. No relief is due.

The PCRA court rejected Appellant's summation that Trooper Havens' trial testimony established that Brown was "known for drugs, drug dealing and crime." PCRA Ct. Op., 7/21/20, at 16. The court noted "[t]here was no testimony whatsoever upon which [such] an inference could be made," nor any evidence" as to the length of their relationship, nor the nature of their relationship, aside from a reference "that she was his girlfriend." *Id.* Furthermore, Appellant ignores the context in which the testimony was given. The PCRA court pointed out "[t]he evidence was relevant to establish that [Appellant] was 'Snoop[,]'" and "Trooper Havens explained to the jury . . . how [Brown] may have been involved with [Appellant] in light of the fact that she was mentioned in the [Victim's] interview." *Id.* We affirm the denial of relief on this issue on the basis of the PCRA court's opinion.

## XI. Reference to the Nickname "Snoop"

Next, Appellant summarizes that "[o]ne of the issues at trial was the identity of the assailant," and the identity of the person known as "Snoop." Appellant's Brief at 37. At trial, Trooper Havens was asked whether he had ever heard Appellant answer to the name, "Snoop." N.T., 1/28/16, at 190. Trooper Havens began to respond that he had, earlier that day, "with attorney Jerry Lynch." *Id.* at 190-91. Trial Counsel raised a hearsay objection, arguing the response would be an out-of-court statement, used to establish a "piece of evidence in this case." *Id.* at 191. When the trial court responded, "I still don't understand. How is it an out-of court —," Trial Counsel withdrew the

objection, without any further explanation. *Id.* Trooper Havens then testified that earlier that day, during a break in the court proceedings, Attorney Lynch said, "[H]i, Snoop, how you doing," and Appellant responded and "engaged . . . in a greeting back and forth." *Id.*

On appeal, Appellant claims Trial Counsel was ineffective for withdrawing the hearsay objection, and thus "forfeit[ing] a valid evidentiary objection as well as the right to confront the witness[, Attorney Lynch,] who contributed to the identification of [A]ppellant." Appellant's Brief at 37.

The PCRA court rejected Appellant's premise that Trooper Havens' testimony involved hearsay. The court cited the comment to Pa.R.E. 801, that "Communications that are not assertions are not hearsay. These would include . . . greetings . . . ." PCRA Ct. Op., 7/21/20, at 17, *citing* Pa.R.E. 801, *cmt*. Furthermore, the court found Appellant was not prejudiced by this testimony, as "there was an abundance of evidence [at trial] that [Appellant] went by the nickname Snoop," including numerous references to Appellant as Snoop and Appellant's phone number being associated with the Instagram account for "Snoop_Rock." *See id.* at 18, *citing*, *inter alia*, N.T., 1/29/16, 8:40 a.m., at 26. We agree with this analysis, and thus decline to grant relief.

## XII. Witness Jermaine Mullen

Next, Appellant alleges Trial Counsel was ineffective for not calling Jermaine Mullen, who was available and willing to testify, as a witness at trial. Appellant's Brief at 38. This issue was one of the two ineffectiveness claims

heard at the PCRA evidentiary hearing. We first summarize Mullen's testimony at the PCRA hearing: he was with the Victim in the motel room on the day of the incident. N.T., 9/24/20, at 19. Appellant came over, at the Victim's request, with other individuals. *Id.* However, the Victim and Appellant got into an argument and a physical fight, but these were resolved. *Id.* at 20. Prior to Appellant's leaving, the Victim asked him to take some of items, including his X-Box game system, to the Victim's aunt's house, and Appellant agreed; a few days later, Mullen saw these same items at the Victim's aunt's house. *Id.* at 21-22.

On appeal, Appellant maintains Mullen's testimony, that Appellant had taken the Victim's property to his aunt's house at his request, would have negated the theft element for the robbery conviction. Appellant's Brief at 38. This claim is meritless.

Our Supreme Court has explained:

When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate *Strickland* prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. "A failure to call a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy."

*Sneed*, 45 A.3d at 1108-09 (citations omitted).

First, Appellant ignores Trial Counsel's testimony about his reasons for not calling Mullen, namely counsel's "serious reservations" about Mullen's credibility, and the fact Mullen's statement was inconsistent with the surveillance video. N.T., 9/24/20, at 6, 7. Trial Counsel recalled that prior to the first trial (that ended in a mistrial), Mullen told him "nothing happened," but after the first trial, Mullen "was all over the place," changed his story, and stated there was an altercation but the Victim was the aggressor. *Id.* at 5-6. Trial Counsel advised Appellant he believed Mullen was "a wild card." *Id.* at 6. Importantly, Appellant does not address the PCRA court's crediting this testimony and concluding Trial Counsel had a reasonable basis for not calling Mullen. *See* PCRA Ct. Op., 10/27/20, at 7.

Second, Trial Counsel testimony is supported by Mullen's own testimony at the PCRA hearing. Mullen acknowledged that he was interviewed by Trooper Havens prior to the first trial. At this time, Mullen stated he did not see anyone fight on the day of the incident, but the Victim "was already beat up before [Appellant] arrived" at the motel. N.T., 9/24/20, at 26. Mullen conceded that statement was inconsistent with his PCRA hearing testimony — that the Victim and Appellant fought in the motel room. *Id.* To this end, the PCRA court opined:

> [Appellant's claim] assumes that the jury would have found Mullen credible. The court cannot reach such a conclusion, as the court did not find Mullen credible. Mullen had *crimen falsi* convictions

and his version of the events changed. The prosecutor would have effectively cross-examined Mullen by utilizing his recorded statement against him. Mullen's statements were riddled with [n]ot only internal inconsistences, but . . . also inconsistencies with . . . the other physical evidence in this case. . . .

*See* PCRA Ct. Op., 10/27/20, at 6-7.

In light of the foregoing, Appellant fails to show, on appeal, that Trial Counsel had no reasonable basis for not calling Mullen at trial. ***See Sneed***, 45 A.3d at 1108-09. Thus, no relief is due.

### XIII. Commonwealth's Closing Argument

Appellant's final ineffectiveness claim focuses on Trial Counsel's alleged failure to object to the Commonwealth's closing argument:

> I just want to again remind you that this is the community that you all live in, and when a guy like [Appellant] assembles a group of people like that and does something this violent in broad daylight and walks away with stolen property casually like it's no big deal it's up to you, the citizens of this community to stop him in his tracks and say, you're not going to do something like this in my community. It's up to you. You're not going to carry a gun around in my community and use it for purposes like this. You're not going to knock someone unconscious and leave him on the floor bleeding without calling for help. Today is the day for you to send a message that nobody is above the law so I would urge you to hold [Appellant] responsible for what he's done and find him guilty of all counts.

Appellant's Brief at 40, *quoting* N.T. Closing Arguments & Jury Charge, 1/29/16, at 42. Appellant contends these statements "invited the jurors to convict [him] on the basis that it was necessary . . . to prevent senseless violence in their community." Appellant's Brief at 40. In doing so, Appellant maintains, "the prosecutor encouraged the jury to deliberate on an issue not

before it." *Id.*, *citing* **Commonweatlh v. Cherry**, 378 A.2d 800 (Pa. 1977). No relief is due.

The PCRA court considered the principle, "Prosecutorial remarks encouraging a jury to 'send a message' to the defendant, rather than the community or criminal justice system, do not invite consideration of extraneous matters and are not misconduct." PCRA Ct. Op., 7/21/20, at 31, *quoting* **Commonwealth v. Patton**, 985 A.2d 1283, 1288 (Pa. 2009). The court found the Commonwealth's remarks were made in this context — "to send a message **to [Appellant]** that he was not above the law and to hold him responsible for his actions. He did not ask the jurors to send a message to the community or the justice system." PCRA Ct. Op., 7/21/20, at 31. The court also found the Commonwealth's "passion and oratorical flair" were proper. **Id.** **See Patton**, 985 A.3d at 1287 ("It is well settled a prosecutor may employ oratorical flair in arguing to the jury. Such arguments do not constitute prosecutorial misconduct when the remarks are based upon the evidence or proper inferences deduced therefrom.").

### XIV. After Discovered Evidence: Victim's Letter

Next, Appellant asserts a letter by the Victim, signed on February 10, 2017, was exculpatory and entitled him to a new trial. We first set forth the verbatim contents of this letter:

> On the incident regarding me and [Appellant]. I don't recall ever seeing [Appellant] involve in the situation. Any suggestion made is due to [T]rooper [H]aven[s] forcefull and personal agenda towards [Appellant]. Haven[s] told me has wanted [Appellant]

ever since he step foot in his town. Which lead me to believe it was unusual. This was obvious by forcing his way into relatives homes unwarranted with no adult present, also his constant threats.

Un-Sworn Affidavit by Noor Ford, 2/10/17. Appellant contends this evidence establishes bias and motive on the part of Trooper Havens, and would have changed the outcome of the trial "because there would be direct evidence from the [V]ictim contradicting the Commonwealth's case." Appellant's Brief at 42. We affirm on the basis of the PCRA court's opinion.

> This Court has stated:
>
> In order to obtain relief on a substantive after-discovered evidence claim, [under 42 Pa.C.S. § 9543(a)(2)(vi),] a petitioner must demonstrate that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. The substantive merits-based analysis is more demanding that the analysis required by the "new facts" exception to establish jurisdiction.

*Commonwealth v. Diggs*, 220 A.3d 1112, 1117 (Pa. Super. 2019) (citations omitted).

> The PCRA court, citing *Diggs*, found:
>
> [Appellant] cannot sustain this claim because he has not pled nor can he prove [the evidence] could not have been obtained prior to trial through reasonable diligence. While the [letter] may be new, the information contained in it is not. Furthermore, a substantial portion of the information would have been used to solely impeach the credibility of Trooper Havens.

PCRA Ct. Op., 7/21/20, at 28. Appellant does not address any of this analysis, which we determine to be sound. Accordingly, we affirm the denial of relief on this claim.

## XV. Cumulative Impact

In his final issue, and first claim of PCRA court error, Appellant avers the PCRA court erred in holding the cumulative impact of Trial Counsel's alleged errors did not violate his Sixth, Eighth, and Fourteenth Amendment rights. Appellant maintains "[t]he cumulative effect is that [he] was denied his right to a fair trial[.]" Appellant's Brief at 44. We disagree.

This Court has stated:

It is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Accordingly, where ineffectiveness claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. . . .

***Commonwealth v. Smith***, 181 A.3d 1168, 1187 (Pa. Super. 2018) (citations omitted).

We incorporate our above discussion and reiterate Appellant has failed to establish arguable merit to his ineffectiveness claims. Accordingly, we do not disturb the PCRA court's denial of relief.

## XVI. Conclusion

For the foregoing reasons, we affirm the October 27, 2020, order of the PCRA court denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/05/2022